IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Cr. No. 05-432 (HHK) |
| v. ) | |
| ) | |
| DAVID CALZADA-IBANEZ ) | |
| ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Mr. Calzada-Ibanez, through his counsel, Lara G. Quint, Assistant Federal Public Defender, hereby respectfully submits this memorandum in aid of sentencing[1] pursuant to Federal Rule of Criminal Procedure 32. Based on all the sentencing factors in this case, including the United States Sentencing Guidelines, Mr. Calzada-Ibanez respectfully asks the Court to sentence him to a period of incarceration of thirty-six months incorporating intensive mental health treatment. Such a sentence would be fair and reasonable in light of Mr. Calzada-Ibanez' mental and emotional state, his need for rehabilitation, and the severity and nature of the incarceration he faces.

**BACKGROUND**

On December 6, 2005, a three-count Indictment was filed against Mr. Ibanez, charging him with Possession of Fraudulent Documents Prescribed for Authorized Stay or Employment in the United States, in violation of 18 USC § 1546(a) (Count One); Aggravated Identity Theft, in

---

[1] A psychological evaluation of Mr. Calzada Ibanez by Carole T. Giunta, PhD, containing personal information, is being provided to the Court under separate cover.

violation of 18 USC § 1028(A)(1)(Count Two); and Unlawful Re-entry of a Removed Alien, in violation of 8 USC § 1326(a).

On March 16, 2006, Mr. Calzada Ibanez pled guilty to Counts One and Three in accordance with a written plea agreement.

## DISCUSSION

I.  **THE POST-<u>BOOKER</u> SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in <u>Booker</u>, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. <u>See</u> 18 U.S.C. § 3553(a)(4)." <u>United States v. Booker</u>, _ U.S. __, 2005 WL 50108,*27 & n.1 (U.S. Jan. 12, 2005) (Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in <u>Booker</u> held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to <u>Booker</u>, therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in <u>Booker</u>–sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional

treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, following Booker courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

**II.    UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. CALZADA-IBANEZ SHOULD RECEIVE A SENTENCE OF THIRTY-SIX MONTHS.**

A.    Statutory Provisions

Pursuant to the applicable statutes, the maximum term of imprisonment is ten years for a violation of 18 U.S.C. § 1546 and twenty years for a violation of 18 U.S.C. § 1326(a) and (b)(2).

B.    Advisory Sentencing Guidelines

(I).    *Applicable Guideline Range*

The Probation Office, consulting the 2005 edition of the Guidelines Manual, has concluded that the Total Offense Level in this case is 21 and that Mr. Calzada-Ibanez's criminal history category is IV, resulting in an advisory Guideline range of 57-71 months. Mr. Calzada-Ibanez has two prior convictions; two of his eight criminal history points stem from the fact that, upon re-entering following his deportation, he was officially on "parole status."

C. Other Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances

of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

*I. Nature of the Offense*

The crimes to which Mr. Calzada-Ibanez pled guilty stem from his status here in the United States. Mr. Calzada-Ibanzes entered the country illegally in order to make a living and, as a result of his status, came into possession of fraudulent identification documents. While Mr. Calzada-Ibanez does not wish to diminish the seriousness of his conduct, he does ask the Court to consider that the crimes in question were neither violent nor drug-related. While the possession of fraudulent documents is extremely serious–and is, understandably, taken extremely seriously by the government–in this day and age, Mr. Calzada-Ibanez certainly had no intention of either threatening the U.S.' national security or enabling others to do so.

*II. Characteristics of the Defendant*[2]

As outlined in the PSR and in the affidavit provided by Dr. Giunta, Mr. Calzada-Ibanez had a difficult childhood and has suffered emotionally and mentally for many years. Mr. Calzada-Ibanez, along with his ten siblings, grew up very poor and often went without food. He began

---

[2] Please see detailed case history and evaluation by Dr. Giunta in conjunction with this portion of the Memorandum.

working at the age of seven and left school after the fourth grade to work full time in order to help provide for his family. Having been physically and verbally abused by his father, he first moved to the United States when he was sixteen. Since that time, he has left and re-entered the country various times. During his stays in the United States, he has been a productive member of society–working, alternatively, as a dry wall worker and painter. Mr. Calzada-Ibanez regularly sent money home to family members in Mexico. Mr. Calzada-Ibanez does have two prior convictions incurred here in the U.S. One occurred when he was eighteen, one occurred when he was nineteen and both stemmed from his addiction to cocaine. Mr. Calzada-Ibanez has suffered from alcohol abuse as well as drug addiction.

    At this point in his life, four of Mr. Calzada-Ibanez' brothers have died–as a result of violence and suicide–and two have become disabled. Mr. Calzada-Ibanez himself has attempted to take his own life on multiple occasions. He is extremely depressed and was diagnosed by doctors at the D.C. Jail with Post Traumatic Stress Disorder and another psychotic illness (see PSR at p. 12).

    *III.  Needs of the Community and Public*

    For the reasons stated in Section II, Mr. Calzada is more a threat to himself than to the community. He has demonstrated his ability to be a productive member of society and what he needs first and foremost is mental health counseling and treatment. In light of his "alien" status, Mr. Calzada-Ibanez will not be re-entering the Washington, D.C. community following his incarceration. Rather, he will be held an additional period of time following the sentence he receives for deportation proceedings. The community would not benefit in any way by an

incarceration longer than 36 months.

In this vein, it bears noting that, as a non-citizen, Mr. Calzada-Ibanez will not be able to participate in a host of programs available to citizens at the Bureau of Prisons. Because he will spend additional time in immigration proceedings, and because his status as a removable alien means he will be prohibited from participation in various programs, Mr. Calzada-Ibanez asks the Court to consider the factors and rationale articulated by this Circuit in *United States v. Smith,* 27 F.3d 649 (D.C. Cir. 1994) in making its sentencing decision. In *Smith,* the D.C. Circuit has specifically held that a downward departure may be appropriate if a defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his confinement. Pursuant to 18 U.S.C. § 3624(c), prisoners in federal facilities have the right to participate in pre-release programs aimed at facilitating their re-entry into the community. In *Lartey v. Dep't of Justice,* 790 F. Supp. 130 (W.D.LA. 1992), however, the court determined that the right to participate in such programs was unavailable to deportable aliens and applied only to prisoners being released into communities within the United States.

Because present law requires that a non-citizen convicted of a federal offense and sentenced to imprisonment must serve the entire sentence (minus statutory good time and time served) and precludes that individual from participating in certain programs while confined, it follows that Mr. Calzada-Ibanez faces more severe treatment in this case than he otherwise would by the Bureau of Prisons.

## **CONCLUSION**

For the reasons set forth above, as well as for any others that it may deem fair and

reasonable, Mr. Calzada-Ibanez asks the Court to sentence him to a period of thirty-six months' imprisonment, incorporating intensive mental health treatment. Such a sentence would be fair and reasonable in light of Mr. Calzada-Ibanez' mental and emotional state, his need for rehabilitation, and the severity and nature of the incarceration he faces. Furthermore, such a sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553.

.

Respectfully submitted,

A.J. Kramer
Federal Public Defender

_____
Lara G. Quint
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500 ex.134